# NOVEMBER, 1923.

J. A. HERRING ET AL. v. HOUSTON NATIONAL EXCHANGE BANK.

No. 3969.  Decided November 15, 1923.

(255 S. W., 1097.).

1.—Contempt—Injunction—Knowledge.

A District Judge and court having been enjoined from any proceedings to enforce a judgment rendered therein during the pendency of an appeal therefrom was not to be held liable for contempt by reason of the issuance and service of a writ of garnishment on said judgment from his court by the clerk and sheriff when he had no knowledge of or participation in said garnishment proceeding. (P. 342).

2.—Same.

The officers (clerk and sheriff) of a court, the judge of which has been enjoined from proceedings to enforce the collection, pending appeal, of a judgment rendered therein, were not guilty of contempt of the injunction by the issuance and service of a writ of garnishment on such judgment where the writ of injunction was not addressed to them and they had no knowledge of it. (P. 342).

3.—Contempt—Injunction—Jurisdiction.

Where the Supreme Court, on remanding a reversed case to the Court of Civil Appeals to be there determined in accordance with its opinion, issued its writ of injunction to the District Judge prohibiting any proceedings by that court to enforce the judgment pending determination of the appeal, it did not, by such remand, lose the power, for the protection of its own jurisdiction, to punish for contempt any violation of its injunction. (P. 347).

Vol. 113 Tex.—22

**4.—Injunction—Scope and Effect.**

An injunction against a District Judge and court forbidding any proceedings therein to enforce its judgment pending an appeal therefrom includes and applies to the officers of the court (clerk and sheriff) and the counsel for plaintiff in judgment, and forbids garnishment proceedings for its enforcement instituted by the latter and carried out by the former though the writ was not specifically addressed to them. (Pp. 347, 348).

**5.—Contempt—Injunction—Good Faith and Motives of Violator.**

See evidence by an attorney charged with contempt in violating an injunction, as to his understanding of its scope and effect and good faith in his action, held to excuse him from punishment, though done in violation of the writ, where the court is still able by its orders to restore the *status quo ante* and avoid the effect of his action. (Pp. 342-351).

**6.—Same.**

Good faith and absence of intentional disrespect may be considered in mitigation of a technical violation of an injunction and sometimes even as purging the contempt, and are here so treated. (P. 351).

**7.—Jurisdiction—Protecting by Judgment.**

The power of the Supreme Court to protect its jurisdiction by enforcing obedience to its writ of injunction is here exercised by vacating and holding for naught certain garnishment proceedings in the District Court held to be a violation of the injunction, on proceedings to punish for contempt the judge, officers of the court, and counsel for plaintiff in judgment. (P. 351).

**8.—Injunction—Enforcement of Judgment.**

Pending an appeal from a judgment recovered against the Board of Prison Commissioners, which involved the question whether the suit was really against the State and hence not maintainable, the District Court rendering same was enjoined from further proceedings to enforce the judgment. This did not by its scope prohibit a separate action by the same plaintiff in another court, for sequestration of property of the Commission to meet the same claim, for the purpose of compelling their appearance and subjecting them to its jurisdiction. Plaintiff and his counsel were not punishable for contempt in violating the injunction by instituting such suit. (Pp. 349, 350).

On petition to the Supreme Court by Herring and others, constituting the Board of Prison Commissioners, for a rule to punish for contempt the Houston National Bank and others for violation of the injunction issued in the above cause and continued in force by order of the Supreme Court in accordance with the opinion in this case, ante page 264, the opinion following was rendered by the Supreme Court.

*W. A. Keeling,* Attorney General, and *W. W. Caves* and *Jno. C. Wall,* Assistants, for relators.

*W. L. Hill,* for Houston National Exchange Bank and Henry S. Fox, Jr.

*T. H. Stone* for respondents W. L. Hill and Jno. C. Randolph.

Elbert Cage, G. O. Pittman, T. A. Binford, James Lyon, in pro. per., respondents.

*Jacob F. Wolters,* for respondent Harvey.

*Russell F. Wolters,* for respondent O. M. DuClos.

MR. JUSTICE PIERSON delivered the opinion of the court.

A petition for a rule for contempt was filed in this Court October 12, 1923, by The Board of Prison Commissioners of the State of Texas, relator, represented by W. A. Keeling, Attorney General, against The Houston National Bank (successor to The Houston National Exchange Bank), acting through Henry S. Fox, Jr., its President, Henry S. Fox, Jr., W. L. Hill, attorney for the bank, the Honorable J. D. Harvey, Judge of the Eightieth District Court, O. M. DuClos, and T. A. Binford, Clerk and Sheriff, respectively, of said Court, Elliott Cage and Grove O. Pittman, composing the firm of Cage Cotton Company, James Lyon, and John C. Randolph, alleging that they and each of them should be held in contempt of this Court for violating its restraining order entered in the above styled cause March 24, 1923, and perpetuated in its opinion and decree of June 30, 1923.

For the sake of a clear understanding of the matters herein discussed, said writ is set out in full as follows:

"WHEREAS, the Board of Prison Commissioners of the State of Texas, and J. A. Herring, Sanford Dean and Walker Sayle, as members of and as constituting said Board of Prison Commissioners, plaintiffs in error in the foregoing styled and numbered cause, filed their petition herein in our Supreme Court on March 24, 1923, alleging, among other things, that on March 12, 1923, the Honorable J. D. Harvey, as District Judge of the 80th Judicial District of the State of Texas, upon petition of the Houston National Exchange Bank, defendant in error, made and entered in Cause No. 97,512, styled Houston National Exchange Bank v. J. A. Herring et al., in said District Court, his order to the effect that defendants in said cause, plaintiffs in error, be cited to appear before him, the said District Judge J. D. Harvey, in the court room of the 80th Judicial District of Texas in Houston, Harris County, Texas, on March 27, 1923, at nine o'clock A. M., to show cause why peremptory writ of mandamus should not issue against them compelling them to pay over all the money now in their hands arising from the operation of the penitentiary system for the year 1922 and 1923, up to and including said March 12, 1923, and, further, that pending a hearing of said petition

the clerk of said court issue a writ of injunction commanding defendants, plaintiffs in error, not to pay out any money which they now have on hand arising from the operation of the penitentiary system during the year 1922 and 1923, up to and including March 12, 1923, or thereafter, and alleging the making and entry by the District Court of the said 80th Judicial District, and by the said Honorable J. D. Harvey, as Judge of said court and district, of numerous other orders and decrees in said cause after the final judgment rendered therein on May 11, 1922, and prays that this court issue its writ of injunction enjoining said District Court of the 80th Judicial District, and the said Honorable J. D. Harvey, as Judge of said court and district, from enforcing or causing to be enforced, or attempting to do so, his said order so made and entered in said cause on March 12, 1923, or any judgment, order or decree so made and entered by him or by said court in said cause since said May 11, 1922, and from holding any hearings or attempting to do so in said cause, or taking any action whatever with respect to or concerning said cause, until this cause has been finally disposed of by this court; and

"WHEREAS, on March 24, 1923, the Supreme Court of the State of Texas did make and enter its order on said petition as follows:

" 'On this the 24th day of March, 1923, it is ordered by the court, it being necessary for the enforcement of its jurisdiction, that a writ of injunction be issued by the clerk, directed to the Hon. J. D. Harvey, as Judge of the 80th Judicial District of Texas, commanding him and said court to desist from hearing or undertaking to determine any proceedings whatsoever, based upon, or for the enforcement of, a certain judgment of said court rendered on the 11th day of May, 1922, in cause No. 97, 512, styled Houston National Exchange Bank v. J. A. Herring et al., or based upon or for the enforcement of, any subsequent judgment, order, or writ in said cause, and from taking any further action whatsoever relative to any indebtedness of the Board of Prison Commissioners of the State of Texas growing out of the purchase of the Fort Bend Cotton Oil Company's properties at Richmond, Texas, until otherwise ordered by this court;'

"THESE ARE, THEREFORE, to command you, the District Court of the 80th Judicial District of Texas, and you, the Honorable J. D. Harvey, as Judge of said court and said 80th Judicial District, that you desist and refrain from hearing or undertaking to determine any proceedings whatsoever, based upon, or for the enforcement of, that certain judgment of said court of said 80th Judicial District of Texas rendered on the 11th day of May, A. D. 1922, in cause No. 97,512, styled Houston National Exchange Bank v. J. A. Herring et al., or based upon, or for the enforcement of, any subsequent judgment, order or writ in said cause, and from taking any further action whatsoever relative to any indebtedness of the Board of Prison Com-

missioners of the State of Texas growing out of the purchase of the Fort Bend Cotton Oil Company's properties at Richmond, Texas, until otherwise ordered by this court.

"Given under my hand and seal of said court, upon said order of our Supreme Court so made and entered on March 24, 1923, on this the 24th day of March, A. D. 1923.

F. T. CONNERLY,

Clerk, Supreme Court State of Texas.

By H. L. CLAMP,

(SEAL)                Deputy.''

This Court's opinion of June 30, 1923, concludes as follows:

"The injunction issued by this Court in this cause on the 24th day of March, A. D. 1923, is continued in force and effect until the appeal of the case is finally disposed of.''

The cause is still pending on appeal in the Court of Civil Appeals for the First District, it having been remanded to that Court for further consideration.

The facts upon which relator bases its application for a rule for contempt for violation of said restraining order are substantially as follows:

On October 8, 1923, there was prepared and filed in the Eightieth District Court by The Houston National Bank, acting through Henry S. Fox, Jr., its president, and W. L. Hill, its attorney, an application for a writ of garnishment to be issued by and out of said court, to be served upon and against Reid Brothers, of the City of Houston, Harris County, Texas, alleging the rendition, validity, finality, and nonpayment of said alleged judgment rendered in this cause in the Eightieth District Court, and praying as is usual in garnishment proceedings. Thereafter, on the same day, writ of garnishment was issued by O. M. DuClos, Clerk of said Court, and was duly executed by T. A. Binford, Sheriff.

Again, about September 20, 1923, The Houston National Bank, through its president and attorney, brought a sequestration suit in the Sixty-first District Court of Harris County, against Merchants Compress Company, alleging it to be the owner of 435 bales of cotton described in its exhibit attached. Relator alleges that respondent bank claimed the right of possession of said cotton through a pretended contract of purchase of it from The Prison Commission, by and through Cage Cotton Company, acting through Elliott Cage, Grove O. Pittman, and James Lyon, without knowledge on the part of The Prison Commission that said bank was in any manner connected with said contract of purchase; that said pretended contract of purchase was negotiated with the view and purpose of refusing to pay for said cotton, but for the purpose only of crediting and applying the pro-

ceeds thereof to the payment and discharge of said alleged judgment in the Eightieth District Court and the notes sued on therein.

The facts were clear and without dispute that District Judge, Honorable J. D. Harvey, had no knowledge whatever of the issuance of the writ of garnishment by the Clerk of his court, and therefore did no act in violation of this Court's order. Also, it appears that District Clerk O. M. DuClos and Sheriff T. A. Binford had no knowledge, by notice or otherwise, of the issuance of the order of injunction, and therefore should not be held in contempt for its violation. Officers of court will not be punished for contempt because of an official error, made without knowledge and in good faith, without intention to disobey a mandate of the Court.

Also, the lack of the knowledge and lack of participation in the acts of violation of the injunction by other parties besides Henry S. Fox, Jr., President of the Houston National Bank, and W. L. Hill, its attorney, were such as to exonerate them.

It appears that Henry S. Fox, Jr. and W. L. Hill were the only ones connected with the several acts complained of who had knowledge of the order of injunction. These respondents present that this Court now had no jurisdiction in this cause, because its jurisdiction came to an end when it remanded the cause to the Court of Civil Appeals for its further consideration; that it has no jurisdiction over the parties and the subject matter of the sequestration suit in the Sixty-first District Court; and that relator has its legal remedy. They deny that they have violated the Court's order, and insist that the issuance of the writ of garnishment out of the Eightieth District Court, as well as the sequestration writ in the suit in the Sixty-first District Court, are not forbidden by this Court's restraining order, and hence said acts are not in contempt of the Court. They disclaim any intention to violate the order of the Court and any intention to treat the Court with contempt, and say that the evidence discloses their good faith.

Inasmuch as the testimony of respondent W. L. Hill throws light upon the facts of the case, upon his view of the law, and upon his purposes and intentions in respect to the order of this Court, and inasmuch as the rulings on contempt in this case are largely controlled by the facts, we here at length quote from Mr. Hill's testimony:

"In the various actions which I have taken in connection with this matter—that is, the issuance of the writ of garnishment and the suit filed in the Sixty-first District Court for the possession of 435 bales of cotton, or in any other acts which I have done, it certainly was not in my mind or was it my purpose to disregard, evade or circumvent in any way the injunction issued by this Court when it granted the writ of error in the case of Herring et al. versus The Houston National Exchange Bank. On the contrary, I made a very careful investigation of the order of the Court, to understand its scope and

extent. It would have been silly and foolish on my part to have taken any action in behalf of my client that was prohibited by the order of the Court. It would not only have been a violation of the order of the Court, but it would have been a futile action, and would have involved my client in heavy expenses. So I was very careful not to do anything which I considered as violative of any order of this Court; and in taking the action I did, I did it conscientiously and in belief that my client had a right to do what was done, and it was done in his interest or in the interest of the Bank.

"Mr. Fox entrusted the entire matter to me, and had very little knowledge of it and took no action whatever, except in what I requested him to do. The only thing he ever did do was to sign a bond for writ of garnishment—an affidavit, I believe, and bond for writ of garnishment, also to make bond for writ of sequestration. As to the order of this Court, its terms and extent, I don't think Mr. Fox ever saw or knew anything about it, except what I told him, which was that the Supreme Court had enjoined Judge Harvey and the Eightieth Judicial District Court from taking any further action with reference to enforcing the payment of this indebtedness. I will state, if counsel will permit me, and the Court, that when the matter of the garnishment, issuing the garnishment, came up I investigated the order of the Court and also the order of the District Court. I was advised at that time that the Prison Commission was preparing to pay out what money they had on hand and what money would come into their hands from this year's operations. I investigated the order of this Court and the order of Judge Harvey, with a view of seeing if anything could be done to protect the Bank from a dissipation or what I regarded as a dissipation of those funds and a violation of the Appropriation Bill of the Legislature. That bill, as I construed it, made appropriation to pay whatever indebtedness may be adjudged to be an obligation against the Prison Commission out of the excess of this year's operations and last year's. I investigated the order of this Court and the order of the District Judge to see if there was anything that could be done to prevent that money being paid out, because after it was paid out it was gone—this Court and no other court would have jurisdiction over it after it had once been expended. The order of Judge Harvey was based upon an application filed by me, asking the Eightieth District Court to require the Prison Commission to pay into court such funds as they then had on hand, after paying the expenses of operations for 1922, and to forbid the Prison Commission from paying out money coming into its hands, after the date of the filing of the order, from the operations of 1923. Judge Harvey made an order prohibiting the Prison Commission from paying out any funds pending a hearing, and cited them—the Commission— to appear on a given date to show cause why the order should not be made permanent.

"Q. This application to Judge Harvey of the Eightieth District Court was made after the Court of Civil Appeals had rendered its opinion that it had no jurisdiction, because of the failure of the Prison Commission to file a bond, and had dismissed the case, was it not?

"A. No, I think you are wrong about that. My recollection is that the Court of Appeals had not then acted on that appeal. I took the position that the Court of Appeals had not acquired jurisdiction because no bond had been filed; so I brought the action in Judge Harvey's court to test it out originally, and Judge Harvey took the view that I did—that a bond was necessary in order to get jurisdiction out of that court, and made this order. I think it was after that that the Court of Appeals held with Judge Harvey that no bond having been filed, that the Court of Civil Appeals had not acquired jurisdiction on the cause, and affirmed the opinion of Judge Harvey.

"As I understood the purpose of my application to Judge Harvey, it was to require the Prison Commission to pay that money into court. As I understood the purpose of the Attorney General's application to this Court, it was to prevent that. Now, the Court made a rather broad order: it said that the district Court—that Judge Harvey and the Eightieth Judicial District Court were prohibited from taking any action or issuing any order or any writ or doing anything whatever based on that judgment. I construed that, after investigation, as meaning that the Judge and the Court were prohibited from doing anything towards the forcing of the payment of that debt or paying the money into court, where it would be under the jurisdiction of that Court and this Court. I did not construe then that that order meant to prohibit—that it did prohibit or could prohibit the plaintiff in that case from exercising any right which the statute gave him. I did not think and I do not think now that this Court intended to say that a writ of garnishment should not issue. As I understood the order—which understanding came from a participation in all the matters, both in Judge Harvey's court and in this Court—that was what the order meant. I did not think that the order of his Court meant that the plaintiff in that case was prohibited from doing anything, except such as might interfere with the jurisdiction of the Court. I construed that the issuance of the writ of garnishment did not interfere with the jurisdiction of the Court, but that it was auxiliary to and in aid of the jurisdiction of this Court, when its effect would be to bring within the jurisdiction of this Court the funds garnished and prevent their being paid out and thereby put beyond the jurisdiction of this Court. Based upon that belief and that understanding of the law I caused the writ of garnishment to be issued, not with any intent to violate any order of this Court, not believing then nor now that I did violate any order of this Court, but believing that my advice to my client was correct and that my action was correct.

"Q.  Now, Mr. Hill, it is alleged in the Motion for Contempt that the Houston National Exchange Bank, in effect, with your connivance, entered into a conspiracy with the Cage Cotton Company and others to buy 435 bales of cotton, and that that act amounted to an effort to circumvent the judgment of this Court, and was a violation of its injunction order.  What is your answer to that charge in the Motion for Contempt?"

"A.  My answer to the charge is that it seems to me to be a very far-fetched one, and that nothing could have been farther from my intention and the intention of the Bank, acting under my advice, than doing anything of the sort.  The facts in reference to that are these: In the case pending in the Court of Civil Appeals, styled J. A. Herring against the Houston National Exchange Bank, the Attorney General has interposed the plea that that action is a suit against the State, and hence can not be maintained.  I regard it as a very serious question in the case.  I do not know what the Court of Civil Appeals is going to hold; I do not know what this Court is going to hold. It is a serious question in the case, and may result in the plaintiff in that suit losing the case and losing this debt, which now amounts to about one hundred and twenty-five thousand dollars, unless we can have the assistance of the courts in some other way, in bringing about the payment of the debt.  When the matter came up after a rehearing in this Court— a motion for rehearing in this Court was refused, and it came to my knowledge that those gentlemen were about to pay out this money—the Prison Commission, I gave a good deal of thought and consideration to devising some method to protect the rights of my client, in the event the Court of Civil Appeals and this Court should hold that that was a suit against the State, and hence could not be maintained.  If that were the holding, and the money paid out, then there was no chance in the world for the Houston National Exchange Bank to collect its indebtedness, except through appropriation by the Legislature.  The present appropriation would then have been dissipated, spent and gone, and no way for the Houston National Exchange Bank to collect its debt.  I regarded that question so dangerous that I contemplated dismissing that case in the Court of Civil Appeals, and filing a new suit, or, rather, taking other action.  I thereupon determined to get possession or have the Bank get possession of some property or funds belonging to the Prison Commission during the year, arising from the operations of the System during the year 1923, for the purpose of forcing the Attorney General to bring a suit against the Houston National Exchange Bank—the Houston National Bank, to test the validity of those notes, and in pursuance of that plan this suit was filed in the Sixty-first Judicial District Court, and a writ of sequestration issued for the purpose of requiring the Attorney General's Department, or somebody representing the State and the Prison

Commission, to come into court and test the question of the validity of those notes, unembarrassed by the plea that it was a suit against the State—that the action was a suit against the State. The statute provides that where the Prison Commission brings a suit, that the party sued may offset by any valid claim; and it was for that purpose that that action was taken. Before taking that action I again examined the order of this Court, and I construed it then as I had before, as being an order to Judge Harvey and the Eightieth Judicial District Court, restraining that court from taking action. I did not construe it then, and I do not construe it now, as forbidding the Houston National Bank from bringing any suit or any action that its attorneys might advise it to bring in any other court in this State. I did not construe that the order of this Court closed the doors of any other court to the Houston National Exchange Bank. I did not construe then and I do not construe that order now as construed by counsel for the Relator here, as giving or as taking—a taking by the Supreme Court of a general superintendence of that case or of the other courts of this State in actions brought by this Bank to enforce its right, and I don't think that—I didn't think then when I took my action, haven't thought since, and don't think now that the action in bringing that suit and sequestrating that property in any way violates any order of this Court or circumvents it; but, on the contrary, it has the effect, if we are correct in our position that the Bank bought the cotton and now owns it, subject to the payment of a debt, that it will put a fund in the Bank there that is subject to the orders of that court—the Sixty-first Judicial District; and the Court of Civil Appeals and this Court on appeal; that it could not in any way deprive this Court or any other court of the right to adjudicate the matters in issue; but, on the contrary, took the fund out of the control of the Prison Commission, which was contending that it was immune from suit, and put it in the hands of an institution that is not immune from suit but subject to the jurisdiction of all the courts.

"I will state further that I have known Mr. Caves, Mr. Keeling, and Mr. Wall, members of the Attorney General's Department, for a great many years; in all of these litigations—mandamus, injunction, and the various proceedings had in this case, that our relations have been friendly and intimate, and that at no time before the filing of this motion for contempt was it ever suggested to me by Mr. Caves or anybody else that my action was contemptuous or in disregard of the orders of this Court. I do not think that I would have changed my view about the law of the case if they had done so, but I certainly would have re-examined my views and seen whether or not there was anything in what I had done in disregard of any order of this Court. The Motion for Contempt was filed without any notice to me. I say that in order to show the Court that no opportunity was given me or anybody connected with this matter to explain either to the Attorney

General or anybody else in authority the motives that prompted us in acting in this matter. I will state to the Court that I would be very glad to have the Court, or either member of the Court, ask me any question about this matter. I have acted in perfect good faith throughout the entire transaction, and I am here, submitting myself to the jurisdiction of this Court, in obedience to its orders here, with the conscience and knowledge that I have not purposely done anything in contempt of this Court.

''With reference to Mr. John C. Randolph, cited here for contempt, —that man is a young lawyer working for me in my office; the only participation he had in this matter was that I signed his name to the petition and whatever papers were filed in the matter. He had no active knowledge or participation in it.''

Respondents argue that this Court *now* has no jurisdiction in the matter of the injunction issued by this Court March 24, 1923, and perpetuated in its judgment rendered June 30, 1923. They freely admit the power of this Court to issue the injunction in the first instance, and to perpetuate it in its judgment, but argue that by a proper construction of its said order, said injunction, along with its other instructions, was remanded to the Court of Civil Appeals for the First District, and, therefore, had passed out of the hands of and out of the jurisdiction of this Court.

This is not tenable. The language of the Court is not subject to that interpretation. The injunction was issued to the District Court, and its order perpetuating or continuing in force said injunction became a part of its judgment in its disposition of the case upon hearing. It being a part of this Court's judgment, it is clearly within the power and jurisdiction of this Court to enforce same.

Mr. Hill defends his act in having garnishment issued under the judgment in the Eightieth District Court, upon the proposition that the order of the Supreme Court forbids the doing of those things only that might interfere with the jurisdiction of that court, and that the garnishment proceeding does not interfere with its jurisdiction, but rather is in aid thereof, by preserving and holding the fund garnished in the custody of and subject to the jurisdiction of the court. He insists that the order of injunction did not forbid the issuance of the writ of garnishment, because the office of the writ of garnishment is to protect the jurisdiction of the Supreme Court, and not to interfere with it; too, that, in this matter, the only jurisdiction and power the Supreme Court had was to protect its jurisdiction. True, its jurisdiction was appellate only, but the entire case was before this Court. The temporary injunction issued by this Court March 24, 1923, as set out herein, was, by the final decision of the case in this Court upon hearing made permanent, or rather ''continued in force and effect until the appeal of the case is finally disposed of.'' It thus became a judgment of this Court, and was effective generally and for all purposes.

That this Court had the jurisdiction and power to enter such judgment, we have no doubt, and likewise that the act of securing the issuance of said writ of garnishment was a violation thereof. If the terms of the order of injunction were broader and more far-reaching than respondents thought they should be, their remedy was by prayer for modification in motion for rehearing.

However, respondent Hill's earnest insistence upon his view of the purport and purpose of this Court's order of injunction, together with his impressive and convincing declarations, both in his written and oral statements of his whole-hearted purpose and desire to conform to the orders of the Court, and his disclaimer of any intention to violate or disregard them, and our perfect confidence in his good faith, acquit him of any intentional disrespect to the Court or insubordination to its orders. Too, weight and fair consideration must be given to the harassing and strenuous conditions and circumstances surrounding his client's litigation, and the difficulty it was encountering to litigate its rights at all.

The order of this Court enjoining "the Honorable J. D. Harvey, as Judge of the 80th Judicial District of Texas, commanding him and said court to desist," etc., "and from taking any further action whatsoever relative to any indebtedness of the Board of Prison Commissioners of the State of Texas, growing out of the purchase of the Fort Bend Cotton Oil Company's properties at Richmond, Texas, until otherwise ordered by this court," applies with equal force to the parties litigant and their attorneys, as well as to the court itself, including the clerk and sheriff thereof. The argument that the order does not include and apply to the clerk and sheriff because not specifically named therein, is wholly untenable. Neither is the reasoning sound that the issuance of the writ of garnishment out of the Eightieth District Court on the 8th day of October, 1923, is not in violation of said order because the issuance of such a writ was not prayed for in plaintiffs' petition in the case, nor embraced in the order made by Judge Harvey, nor within the contemplation of the order of injunction of this Court. The injunction order, by its terms, is very broad as applied to any and all actions whatsoever that might be taken under, by virtue of, or on account of the litigation in said Eightieth District Court, which litigation was and is pending in the appellate court.

The relief granted to the Prison Commission under its prayer was to command the Eightieth District Court, its Judge, etc., to take no further action whatsoever in said litigation pending appeal of the case and until otherwise ordered.

The suing out of the writ of garnishment on the judgment of the Eightieth District Court, by respondent Henry S. Fox, Jr., President of The Houston National Bank, and W. L. Hill, attorney, and the issuance of the same by O. M. DuClos, Clerk of said Eightieth District

Court, and the execution thereof by T. A. Binford, Sheriff, were clearly in violation of said order of this Court.

The injunction issued by the Court was not primarily to prevent the payment of the debt claimed by the Bank against the Prison Commission, but to prevent any action looking to that end by the District Court and those connected therewith, pending the appeal and the further disposition by the appellate courts of the matters involved in that litigation.

The sequestration proceedings in the Sixty-first Judicial District Court, complained of in relator's motion, is a suit by The Houston National Bank as plaintiff against Merchants Compress Company, to test the right of possession of 435 bales of cotton plaintiff claims to have bought from the Board of Prison Commissioners. Relator insists that this act of sequestration is in violation of the order of injunction issued by this Court as above set out, and at least an evasion of said order.

After a careful consideration of this matter, we have concluded that said act does not come within the scope of said order, or at least was not included within the contemplated scope of said order.

We do not doubt the authority of this Court to inquire into the acts done in said Sixty-first District Court, and to compel obedience to its said order, if it found said acts to be in violation of its order or an evasion and circumvention thereof. Unless such should appear to be the case, this Court would not inquire further into the purpose and merits of that case, as its jurisdiction is limited to the purpose named.

It was not the purpose or scope of the order issued by this Court to prohibit the respondent Bank from seeking to acquire jurisdiction over the Prison Commission in any court of competent jurisdiction by means not in conflict with or in interference with this case pending on appeal.

Probably the most important question presented on appeal in this case was the right to bring and maintain this suit against the Prison Commission, it being a department of the State, without the consent of the State. If respondent Bank, in another case, in a legal way, should invoke the jurisdiction of a court over said Prison Commission, or if the State should consent to be sued, or should otherwise submit itself to the jurisdiction of the Court, it would not be held to be a violation of the Court's order in this case, where the very cause of action itself, the right to maintain it, is so seriously involved, unless it clearly appeared to come within the scope of said order or to be an evasion of it.

That such a suit was not in the contemplation of relator in applying for the restraining order or in the mind of the Court when it was granted, we have no doubt, and we think the terms of the order itself are insufficient to extend its meaning to include said suit.

From our understanding of the situation between The Houston National Bank and the Prison Commission, if the Bank, under its seques-

tration proceeding in the Sixty-first District Court should be able to hold the cotton therein sought to be held by said writ, and if thereby it should be successful in acquiring jurisdiction over the Prison Commission, it is probably true that the value of said cotton would be applied to the payment of the notes sued upon in this suit. But, as stated, if the suit here should wholly fail, and be dismissed on account of its being a suit against the State, and having been brought without the consent of the State, as indicated in our opinion of June 30, 1923, then would it not be a grave injustice for this Court, by injunction or otherwise, to so hedge about and control the acts of the Bank and its attorneys, in matters not connected with this suit, as to prevent them from in any manner securing jurisdiction over the Prison Commission, and to hold its property subject to that jurisdiction? Is the Bank by this Court's writ of injunction cut off from other methods of collecting its debt? To do so in this case would, we think, be an abuse of its great powers.

In the suit pending on appeal no property of relator is empounded or held for the satisfaction of any judgment that may be rendered therein.

The purpose of the injunction was to so restrain the acts of the Eightieth District Court, and the parties to the suit, as to prevent interference with the jurisdiction of the appellate courts in this case and to preserve the rights of the parties in respect to the suit pending the appeal.

Relator asserts that the sequestration suit in the Sixty-first District Court has its foundation in and grows out of the original proceedings in his cause; that it is dependent upon the validity of the judgment in this cause in the Eightieth District Court, and has for its only purpose the enforcing of said judgment and the satisfying of the Bank's demand against the Prison Commission.

This, we think, is not a fact,—at least not necessarily so. True, its ultimate purpose is the collection of its notes, but as a coloring of all its actions is its inability to get into court at all and its difficulty of securing an adjudication of its claims at all in any court. To legally get its adversary into court to answer its demands is its first necessity, since The Commission, or the State, has failed or refused to bring suit in reference to this controversy, or to voluntarily submit itself to the jurisdiction of the court in which the Bank had brought suit against it. It appears to be an independent effort to secure jurisdiction of the opposing party and then to litigate the merits of its controversy. Therefore, we are unwilling to hold that the said sequestration suit is only a part of this suit, or that the order of injunction issued by this Court includes it in its reasonable scope.

In the sequestration suit in the Sixty-first District Court the relator has its legal remedy in the said court or by appeal from its judgment.

Since a writ of injunction or prohibition will lie only in cases of manifest necessity and after fruitless efforts for relief in the inferior tribunal, one formerly issued will not be construed to embrace a case where such legal remedies exist. To do so would be a contravention of the well established rule applicable to these extraordinary writs.

It is generally held that a disclaimer of an intention to violate a court's order is no excuse, especially where the act committed is clearly within things prohibited by the court's order. However, where there is a reasonable basis for the acts complained of, though an erroneous one, and where it appears no disrespect was intended, and the good faith of the contemner is not doubted, such lack of intentional disrespect will be considered in mitigation of, and sometimes even as purging, the contempt. Ex parte Brandenberg, 63 Tex. Cr., 577, 140 S. W., 780; Ex parte Ryan, 62 Tex. Cr., 19, 136 S. W. 65.

For more than thirty years respondent Hill has been a constant practitioner before this and other courts of this State, and throughout this long period of time his conduct as a lawyer has been of the highest order, and has merited the approval, confidence, and appreciation of the courts. And now, while we hold that the acts done by him in regard to the garnishment proceedings are in violation of this Court's order, we are prepared to, and do, accept his disclaimer of intentional violation thereof at its full value.

The power to punish for contempt will be exercised with great caution, and only as a preservative, and not as a vindictive measure; and in the instant case the best ends of justice will be subserved by omitting punishment.

Generally one adjudged guilty of contempt will be allowed to purge the contempt by performing the act required, or by undoing the act constituting the contempt. In this case, by our own order and as a part of our judgment herein, we set aside, vacate, and hold for naught the garnishment proceedings in the Eightieth District Court.

All costs in this contempt proceeding, including court reporter's fee, are awarded against respondent Houston National Bank.

Respondents are discharged.

Opinion delivered Nov. 15, 1923.

(Chief Justice Cureton did not sit in this case.)