## LEWIS et al. v. CLARK.

### No. 10663.

Court of Civil Appeals of Texas. San Antonio.

May 10, 1939.

Rehearing Denied June 7, 1939.

Tarlton, Vaughan & Smith and Jones & Kirkham, all of Corpus Christi, for appellants.

Sidney P. Chandler, of Corpus Christi, for appellee.

SLATTON, Justice.

G. C. Clark filed this suit for injunction against Coast Operating Company, a corporation, S. C. Lewis, H. E. DeLee, J. M. Barr, Bruce Page, J. H. Wilkins, H. C. Weikel, S. C. Lewis, Jr., J. B. Salmon, Houston National Bank of Houston, Texas, and Meyer C. Wagner, trustee.

The following allegations were made: the execution and delivery of an oil and gas lease to S. M. Lippard on October 21, 1936, covering certain lots and parcels of land in Nueces County. Clark alleged the termination of such lease and the abandonment of equipment used by the lessee or his assigns under the lease. That on the 11th day of January, 1939, he negotiated a verbal trade through the trustee of the bank whereby he obtained a contract of foreclosure of the bank's claimed lien on said fixtures and equipment. That on the 16th day of January, 1939, Clark verbally agreed to purchase from J. B. Salmon all of this right and title to such fixtures and equipment and under the terms Clark agreed to pay other parties their pro rata part of the value of said property. That because of said agreement he became the owner of the fixtures, casing, equipment, etc. That Clark was in possession of said equipment on the 4th of February, 1939. Clark alleged a compliance of his verbal agreement with Salmon and that he and Salmon executed a bill of sale of said property to Sam Isenberg. Clark alleged that he had complied with his agreement to purchase with the bank and Salmon and was ready and willing to carry out said agreements. That he was already in possession of said property, claiming title thereto, but agreed to pay said two parties the amounts alleged for any asserted claims they made thereto in order to dis-

pose of any disputes. Clark pleaded a tender into court of the money which he alleged that he had agreed to pay Salmon and the bank. That the defendants residing in Nueces County are now seeking to remove from said premises and to convert to their use and benefit, without his consent and with intent to deprive him of the value thereof, all said equipment, etc., describing it. "That he has no adequate remedy at law and that he has reason to believe and does believe that said defendants are not financially able to respond in damages to this plaintiff for the value of said equipment which the plaintiff says is about $3,425.00." That said defendants had waited until after the office of the District Clerk was closed in order to be able to convert such property to their own use before said defendants could be stopped by an order of court.

That in 1936 three wells were drilled on said land and that Salmon furnished the money for the drilling and equipment, and in virtue of his paying for the equipment became entitled to be repaid for such expense and thereafter to participate in the income from all the production from said wells. That Salmon has not been fully repaid for the drilling expense and equipment cost and under the laws of the State has a lien on such property superior to all others. That under the terms of the lease it remained in force for a period of one year from the 21st day of January, 1936, or as long thereafter as either oil or gas is produced in payment quantities. That at the end of production the lessee shall level off and place the land in the condition it existed on the 21st day of January, 1936. That said lease terminated on the 1st day of September, 1937, if not before, and that production ended on that date. That said land had not been leveled off and the equipment had been left on said premises. That the property covered by said lease was a subdivision which had been subdivided for the purpose of sale, and that the failure of lessee to comply with the terms of the lease had deprived plaintiff of the possession thereof. That the nature of such property is that the equipment should have been removed from said land within sixty days after the end of production, and the failure to remove the equipment by the lessee and the abandonment thereof said equipment became a part of the realty. That on the 4th day of February, 1939, the defendants went upon his land to attempt to remove said property thereupon, which

had become a part of the realty, opened the valve of the gun barrel on one of the tanks and permitted fifty barrels, or more, of oil to run on the ground. That Clark owned ⅛th of the oil and ⅟₁₆th of the ⅞ths of said oil, and that it will cost $300 to place the land in a usable condition.

The prayer was for restraining order, temporary and permanent injunctions and for damages.

A restraining order was issued by the trial court pending a hearing.

On February 9th, 1939, all defendants answered except Salmon, the Bank, and Wagner, who were not cited.

The defendants answered, among others, with general and specific denials: That Coast Operating Company was a corporation. That the lessee or his assigns had failed to remove the property within a reasonable time. That Clark had purchased any lien upon the property and that Clark was the owner of said property. That defendants had converted any property belonging to Clark. That defendants are insolvent or that Clark has no adequate remedy at law. That Salmon had any character of constitutional lien upon the property. That said lease terminated and production ended on September 1, 1937. That defendants have deprived plaintiff of the use and benefit of said land.

Defendants further alleged that defendants Barr, Page, Wilkins and Weikel are merely employees of Coast Operating Company and claim no interest in and to the property. That under the terms of the oil and gas lease "Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by lessee on said land, including the right to draw and remove all casing." That H. N. B. H. Corporation at the time of the filing of this suit is and was the owner of said oil and gas lease, and on the 25th day of January, 1939, by written instrument it conveyed to Coast Operating Company all pipe machinery, connections, tanks and equipment in and upon said property for a consideration of $1,000.

The defendants plead further facts upon which an estoppel is claimed against Clark. That no injunction should issue for the reason that plaintiff has a clear and adequate remedy at law by way of legal process of writ of sequestration or attachment, if and in the event he should own any interest or title in and to said equipment

(which the defendants deny), and that the defendants are amply solvent and able to respond in damages for any monetary judgment plaintiff could obtain.

The prayer was that plaintiff's application for injunction be in all things denied and for costs.

After a hearing the trial court granted the injunction. The defendants have appealed.

The appellants rely upon three main propositions of law upon which they seek reversal of the temporary injunction granted by the trial court.

We shall only notice the second one, which is to the effect that the trial court erred in granting a temporary injunction because the plaintiff had an adequate legal remedy. The pleadings quoted and the proof discloses that the property in question is personal property, that is, what is commonly called trade fixtures among those engaged in the petroleum industry. Some of the casing was pulled by one of the parties to this record by stipulation after the suit was begun. The proof showed the property to be of the value of $2,750. In fact both parties to this controversy have dealt with the property as personalty and the record shows that each is desirous of removing the same in order to effectuate a sale thereof as personalty.

■ Clark did not offer any evidence that the appellants were insolvent and unable to respond in damages; hence he failed in his proof to negative the existence of an adequate legal remedy. If, as Clark claims, the property belongs to him and the appellants were converting the same, he had his legal remedy by a suit for damages.

Not only did Clark's proof fail to show the insolvency of the appellants but the appellants offered proof which tended to show that the Coast Operating Company was solvent and, in fact, had a net worth of more than $20,000.

We have been unable to find any proof and none has been pointed out by the appellee to show the inadequacy of the existent legal remedies which are available to the appellee. Therefore, under the authorities, the trial court erred in granting a temporary injunction. Hawkins v. Graham, Tex.Civ.App., 81 S.W.2d 754; West Texas Utilities Company et al. v. Farmers' State Bank in Merkel, Tex.Civ.App., 68 S.W.2d 648, and authorities cited on page 651.

The judgment granting the temporary injunction will be reversed and the injunction dissolved.

■ The appellee, Clark, has filed in this Court a complaint charging the appellants with contempt of court, in that they violated the terms of the temporary injunction granted by the trial court, and having been appealed became the order within the jurisdiction of this Court. The appellants, after being cited by this Court, filed sworn answers which show that the appellants were without actual knowledge of the broad scope of the injunction. That the acts claimed by the appellee to be violative of the injunction were innocently committed by the appellants, not in contempt of the court order but through an honest desire to protect the property in controversy from being taken or removed from the premises. That the appellants were of the opinion that their acts in protecting the property were in accordance with the decree of the court and not contrary thereto. It may be that the acts of the appellants complained of by the appellee were violative of the injunction; however, there was a reasonable basis for the appellants to believe that they had a right to protect the property in suit, in the absence of actual knowledge of the court order. The appellants should have acquainted themselves fully with the terms of the injunction before taking any action with regard to the property, but the appellants, by their answers, have convinced us that no disrespect was intended. Even though the basis for their action be an erroneous one, their good faith is not doubted.

We are of the opinion that the appellants are guilty of contempt, but the answers of the appellants fully purge themselves of such contempt and that the ends of justice will be better subserved by omitting punishment, save for cost of the contempt proceedings. Herring v. Houston Nat. Exch. Bank, 113 Tex. 337, 255 S.W. 1097.

It is so ordered.