**Ex parte Sandra Lee Bishop ROGERS.**

**No. 07–82–0032–CV.**

Court of Appeals of Texas, Amarillo.

May 11, 1982.

Robin M. Green, Amarillo, Floyd D. Holder, Jr., Lubbock, for relator.

William A. Clifford, Lubbock, for movant.

Before REYNOLDS, C. J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

This is an original habeas corpus proceeding. Relator Sandra Lee Bishop Rogers was adjudged in contempt of the 137th District Court of Lubbock County, Texas. The contemptuous acts were her failure to return, at the end of a visitation period, the minor children of her marriage to Gary Bishop, and keeping them beyond the jurisdiction of the court for a period in excess of

four years. We granted leave to file a petition for habeas corpus and released relator on bond pending determination of this cause.

■ Relator's original habeas corpus proceeding in this court is a collateral attack on the contempt judgment. *Ex parte Supercinski*, 561 S.W.2d 482, 483 (Tex.Cr.App. 1977). Because it is a collateral attack, relator must convince the appellate court that the judgment is void. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex.1976).

■ The contempt judgment imposes two penalties upon relator. First, she is sentenced to thirty days in jail and a fine of one hundred dollars. This portion of the judgment is a sentence for criminal or penal contempt and is authorized by Tex.Rev.Civ. Stat.Ann. art. 1911a (Vernon Pamphlet Supp. 1965–1981) as punishment for failure to obey orders of the court. Second, she is required to remain in jail, after service of the thirty day sentence, until she has purged herself of contempt by:

1. Payment of $62.00, as costs of the proceedings, to the District Clerk of Lubbock County, Texas.

2. Payment of $2,500.00 as "costs of [the] proceeding" to William A. Clifford, attorney for Gary Bishop.

3. Delivery of possession of the minor children to Gary Bishop.

The record reflects that relator has not actually been confined to the county jail for a period of thirty days. There is, however, attached to the petition for writ, an affidavit of the Lubbock County Sheriff reciting that, through application of his normal "good time" credit, relator has completed the jail portion of her sentence. The fine has been paid.

The threshold question for our determination is whether a county sheriff may give "good time" credit on a jail term assessed as punishment for criminal contempt of court. If the sheriff does not have this authority, relator's jail sentence has not been served, and our grant of leave to file this petition was improvidently granted.

Article 5118a, Tex.Rev.Civ.Stat.Ann. (Vernon Pamphlet Supp. 1971–1981), provides in pertinent part:

In order to encourage county jail discipline, a distinction may be made in the terms of prisoners so as to extend to all such as are orderly, industrious and obedient, comforts and privileges according to their deserts; ... Commutation of time for good conduct, industry and obedience may be granted the inmates of each county jail by the sheriff in charge.

In construing this statute, in a somewhat different context, the Court of Criminal Appeals has said, "[s]uch statute provides that the sheriff shall have the sole discretion in granting commutation of time of *those prisoners in his custody serving jail terms in the county jail.*" [Emphasis added.] *State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex.Cr.App.), *cert. denied sub nom. Pruett v. Texas*, 404 U.S. 910, 92 S.Ct. 226, 30 L.Ed.2d 182, *rehearing denied* 404 U.S. 996, 92 S.Ct. 529, 30 L.Ed.2d 548 (1971).

The question whether Article 5118a gives the sheriff power to commute time for prisoners serving contempt sentences is apparently one of first impression. Both the Court of Criminal Appeals and our Supreme Court have, however, decided similar issues relating to contempt by analogizing from the procedures followed in misdemeanor cases.

In *Ex parte Heptinstall*, 118 Tex.Cr.R. 160, 39 S.W.2d 75 (1931), our Court of Criminal Appeals, in deciding whether a woman found in contempt and sentenced to pay a $100.00 fine and serve 3 days in jail should be released without first having paid her fine, said:

This not being a civil but a criminal contempt, [citations omitted], the fine, if not reduced by a judgment of the court in which it was entered, must be paid or satisfied in the same manner as prescribed by law for the satisfaction of a conviction for a misdemeanor.... *Id.* 39 S.W.2d at 76.

The court went on to hold that relator must satisfy the judgment by either paying or

serving out her fine before she would be entitled to release. *Id.*

Our Supreme Court used a like analysis in *Ex parte Genecov,* 143 Tex. 476, 186 S.W.2d 225 (1945). There, the issue was whether the court had power to "assess punishment for more than one act of contempt in a single proceeding, although the aggregate punishment assessed exceeds the punishment which the court is authorized to assess for a single contemptuous act...." *Id.* 186 S.W.2d at 226–27. Holding that the court does have the power to do so, our court of superior jurisdiction stated that contempt is analogous to a misdemeanor. *Id.* 186 S.W.2d at 227. A defendant may be convicted of separate, independent misdemeanors in a single information, the court reasoned, therefore, a contemnor may be found to have committed, and be assessed punishment for, more than one act of contempt in one proceeding. *Id.*

■ Utilizing the misdemeanor analogy, we find the sheriff was authorized by Article 5118a to give relator "good time" credit on her thirty-day sentence for contempt. By its terms, Article 5118a applies to all persons serving jail terms in county jail, including, of course, those convicted of misdemeanors. *State ex rel. Vance,* 465 S.W.2d at 168. Thus, just as the sheriff may give those serving misdemeanor sentences credit for "good time" served, he may likewise do so on a sentence for criminal contempt. Relator has, therefore, served out her criminal contempt sentence, and her petition for habeas corpus is properly before this court.

The result reached herein does not, we think, in any way denigrate the inherent possession by a court of all powers necessary for the exercise of its jurisdiction or the enforcement of its lawful orders. In any consideration of this question, it is important to bear in mind the essential distinction between criminal contempt and civil contempt.

■ Civil contempt proceedings are remedial and coercive in nature. A judgment of civil contempt exerts the judicial authority of the court to compel obedience to an order or decision of the court and, upon compliance, the contemnor is entitled to release. Criminal contempt, on the other hand, is punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court. *Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976). Indeed, the extremely close relationship between criminal contempt and any other crime has been recognized by the Supreme Court of the United States. In *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), the Court stated:

> Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes: 'These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the fundamental characteristic of crimes as that word has been understood in English speech.' [Citations omitted.] Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates.

The limits within which the punishment for criminal contempt may be levied have historically been defined by the legislature as have the punishment for penal code violations. The use of the power to set those limits is a proper exercise of legislative authority long recognized in our jurisprudence. It would seem to follow in natural order that the same legislature which has authority to set those limits would have discretion to direct, for a salutary purpose, the manner of service of that punishment. When it has done so, in the clear and explic-

it manner which, we believe, a reading of Article 5118a evidences, that direction should be followed. The failure by this court to do so would amount to judicial legislation and would weaken that system of checks and balances so important, essential and inherent in our peculiar and distinctive system of government.

It must also be emphasized that by recognizing this limitation we do no violence to the inherent and necessary authority of a court to exact, without limitation by other branches of the government, through the exercise of its civil contempt powers, necessary compliance with its orders and directions. The proper exercise of this power is the keystone of the zealous maintenance of the judicial independence and integrity essential to a proper execution of judicial responsibilities. The decision reached herein, we believe, is a proper exercise of that difficult and onerous task of implementation and interpretation of our framework of law which is the hallmark and unique prerogative of the judicial branch.

The continuation of, and respect for, that function is contingent upon its disciplined and reasoned use by the courts. The interpretation made herein, we think, represents a proper and restrained exercise of that right and responsibility.

The second portion of the judgment, and the part of which relator complains, is a sentence for a civil contempt, is of indefinite duration, and is designed to force relator into compliance with the court order she has violated. Relator herself determines the duration of this sentence by deciding if, and when, she will obey the court order violated. Thus, she carries the jail keys in her pocket. *Ex parte Werblud*, 536 S.W.2d at 545.

Possession of the children has been delivered and the sixty-two dollar ($62.00) court costs have been paid. Relator asserts that the portion of the judgment ordering confinement until the attorney fees are paid is invalid. She argues that the use of the coercive power of contempt to force payment of attorney fees, when such fees were incurred for any reason other than the enforcement of a duty to support minor children, violates the Texas Constitution, art. I, § 18, inasmuch as it constitutes imprisonment for a debt.

■ It is axiomatic that, as a general rule, one cannot be imprisoned for debt and, even if a non-payment violates a court order, it may not generally be enforced by imprisonment. *Ex parte Yates*, 387 S.W.2d 377, 380 (Tex.1965). To this general rule, there are two exceptions. A trustee, including a constructive trustee, may be held in contempt for willfully refusing to obey an order to pay over funds held in his hands to the one rightfully entitled thereto. *Ex parte Preston*, 162 Tex. 379, 347 S.W.2d 938, 940 (1961). *See Ex parte Jackson*, 590 S.W.2d 775, 776–77 (Tex.Civ.App.—El Paso 1979, no writ); *Ex parte Thomas*, 610 S.W.2d 213, 214 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). The rationale for this exception is that a court having jurisdiction of the parties and the rest of the litigation has authority to order the surrender of property held by any party to the suit. Here, the relator having delivered possession of the children, there is no correlation between this exception and the case at bar.

A second exception is embodied in Texas Rules of Civil Procedure 308–A. Rule 308–A provides that the court may enforce an order to pay child support by holding the defaulting party in contempt of court. Further, the rule permits the court to tax costs of court and attorney fees against the party in default. In *Ex parte Helms*, 152 Tex. 480, 259 S.W.2d 184 (1953), our Supreme Court held that the constitutional right not to be imprisoned for debt is not violated by a contempt order enforcing a child-support judgment which includes an award of attorney fees. *Id.* at 188; *see Ex parte Myrick*, 474 S.W.2d 767, 771–72 (Tex. Civ.App.—Houston [1st Dist.] 1971, no writ).

The rationale for this exception is that public policy imposes upon parents an obligation to support their children; this obligation is not a debt, but a legal duty. Attorney fees and costs of enforcing this duty

are "incidental to and a part of the payments necessary for the support of the minors." *Ex parte Helms*, 259 S.W.2d at 188–89. Consequently, since they are of the same nature as the child support orders for which they are a necessary means of enforcement, attorney fees and costs awarded in such proceedings are not considered a debt and may be enforced through a judgment of contempt. *Id.* Because the attorney fees awarded in the instant case were for enforcement of a child custody order, rather than a child-support order, the fees cannot fall within this exception.

Movant urges that a third exception to the general rule against imprisonment for debt is created by the 1981 amendment to § 11.18, Tex.Fam.Code Ann. (Vernon Supp. 1982). Section 11.18 permits the trial court to award as costs, in actions to affect the child-parent relationship, including contempt, enforcement and habeas corpus proceedings, attorney fees payable directly to the lawyer. Movant asserts the necessity of bringing this action to force him to employ counsel and expend monies for attorney fees. Thus, he reasons, his ability to support his children from his own resources is depleted in the same manner as if he were attempting to enforce collection of court ordered child-support payments. Movant contends, therefore, that the court has power under section 11.18 to award attorney fees in actions to enforce child custody orders, and to enforce its award with contempt power. We are unable to agree with movant's persuasive argument.

■ The power to punish for contempt of court is one to be exercised with great caution. *Herring v. Houston Nat. Exch. Bank*, 113 Tex. 337, 255 S.W. 1097, 1104 (1923). In recognition of this old and widely accepted principle, Texas courts have heretofore been careful to limit any extension of the "duty of support" exception to those services and costs required for obtaining child support. *See Ex parte Myrick*, 474 S.W.2d at 772 (where the court held void a contempt judgment entered to force relator to sign, pursuant to a divorce decree, an agreement to create a trust for the support of his minor children and to pay attorney fees for services rendered in connection with enforcing the agreement); *Ex parte Payne*, 598 S.W.2d 312, 320 (Tex.Civ. App.—Texarkana 1980, no writ) (where the court held void a contempt sentence because it was unclear whether the judgment for attorney fees was attributable to services performed pursuant to enforcing child support orders or to services rendered pursuant to section 11.18, actions to affect the child-parent relationship). Moreover, prior to the amendment of section 11.18, courts made no attempt to enforce collection of attorney fees by contempt in any action other than proceedings to enforce child support orders.

■ While the award of attorney fees and assessment of costs against relator was proper and authorized by section 11.18, we hold the trial court did not have authority to enforce the payment of these fees by contempt proceedings. Thus, that portion of the court's judgment directing confinement until the attorney's fee is paid is void.

The writ is granted and relator is discharged from confinement and the sureties on her appearance in this court are discharged from liability thereon. It is so ordered.

COUNTISS, Justice, concurring.

I agree with the result reached in the opinion of the Court authored by Justice Boyd, and with the rationale for that result, except in one respect. I do not believe the legislature can deprive a court of the power to require a person sentenced to jail for criminal contempt to serve the full sentence, without good time credit, if the court so orders. Thus, I view Tex.Rev.Civ.Stat. Ann. art. 5118a (Vernon 1971 to 1981 Pamphlet Supp.) as a valid grant of discretionary authority to a sheriff only if it is recognized that the exercise of that authority is inferior to the court's inherent power in contempt matters. The authority to require full service of a criminal contempt sentence is, in my opinion, a part of the power to punish and, thus, a part of that inherent power. As stated by the Supreme

Court in *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980), "The power to punish a party who fails or refuses to obey a prior order or decree of the court for contempt is an inherent power of the court and is an essential element of judicial independence and authority." *See also Vondy v. Commissioners Court of Uvalde Cty.*, 620 S.W.2d 104, 108–10 (Tex.1981).

In this case, the sheriff recognizes that limitation on his power (*see* footnote 3 in the dissenting opinion) and the record does not reflect an order prohibiting good time credit; therefore, the sheriff could give it. If, however, the court had ordered the sheriff to refrain from giving good time credit to the relator I would hold that the sheriff could not give such credit.

REYNOLDS, Chief Justice, dissenting.

In my view, Article 5118a, Texas Revised Civil Statutes Annotated (Vernon 1971 to 1981 Pamphlet Supp.),[1] which authorizes sheriffs to allow credit on the sentences of misdemeanants for their good conduct, does not empower sheriffs to bestow on contemnors any good conduct credit to apply on jail confinements ordered by the courts for contempt. Consequently, and because relator Sandra Lee Bishop Rogers had served, at the time we authorized her release on bond, only twenty-one of the thirty days' punitive punishment fixed by the court for her contempt, I respectfully register this dissent to my Brethren's premature granting of the writ of habeas corpus.

At the outset, I recognize that the Act's broad language, considered alone, can reasonably convey the idea of its application to all of "the inmates of each county jail;" yet, I do not perceive that the legislature intended the statute to apply to contemnors who are punished by confinement in jail. Such an intent is completely incompatible with the many provisions of the law of contempt, and is negated by both the historical development of the law and intentional expressions in collateral legislative enactments.

Historically, some form of clemency has been provided in this State to encourage rehabilitation and discipline of a prisoner who is serving a sentence imposed as punishment for the commission of a criminal offense prosecuted by indictment or information. *See, e.g.,* Tex.Const. art. IV, § 11; Tex.Code Crim.Pro.Ann. art. 42.12 (Vernon 1979; Vernon Supp.1982) and arts. 43.09 & 43.10 (Vernon Supp.1982); 1955 Tex.Gen. Laws, ch. 461, § 1 at 1182; 1963 Tex.Gen. Laws, ch. 371, § 1 at 943; Tex.Rev.Civ.Stat. Ann. art. 5118a (Vernon 1971 to 1981 Pamphlet Supp.). The latter enactment, the application of which by the majority to jail confinements for contempt has induced

---

1. The text of the statute reads: "In order to encourage county jail discipline, a distinction may be made in the terms of prisoners so as to extend to all such as are orderly, industrious and obedient, comforts and privileges according to their deserts; the reward to be bestowed on prisoners for good conduct shall consist of such relaxation of strict county jail rules, and extension of social privileges as may be consistent with proper discipline. Commutation of time for good conduct, industry and obedience may be granted the inmates of each county jail by the sheriff in charge. A deduction in time not to exceed one (1) day for each day of the original sentence actually served may be made from the term or terms of sentences when no charge of misconduct has been sustained against the prisoner. This Act shall be applicable regardless of whether the judgment of conviction is a fine or jail sentence or a combination of jail sentence and fine; provided, however, that such deduction in time shall not exceed one-third (⅓) of the original sentence as to fines and court costs assessed in the judgment of conviction. A prisoner under two (2) or more cumulative sentences shall be allowed commutation as if they were all one sentence. For such sustained charge of misconduct in violation of any rule known to the prisoner (including escape or attempt to escape) any part or all of the commutation which shall have accrued under this Act in favor of the prisoner to the date of said misconduct may be forfeited and taken away by the sheriff, provided that the sheriff has complied with discipline proceedings as approved by the Texas Commission on Jail Standards. No other time allowance or credits in addition to the commutation of time for good conduct herein provided for may be deducted from the term or terms of sentences. The sheriff shall keep or cause to be kept a conduct record in card or ledger form and a calendar card on each inmate showing all forfeitures of commutation time and the reasons therefor."

this dissent, has been appraised, in conformity to my view, by our supreme court for criminal matters thusly:

It is clear from the history and the wording of the present statute [Article 5118a] that the same is applicable only to misdemeanor "terms of prisoners * * * regardless of whether the judgment of conviction is a fine or jail sentence or a combination of jail sentence and fine."

State ex rel. Vance v. Clawson, 465 S.W.2d 164, 167–68 (Tex.Cr.App.), cert. denied sub nom. Pruett v. Texas, 404 U.S. 910, 92 S.Ct. 226, 30 L.Ed.2d 182, rehearing denied 404 U.S. 996, 92 S.Ct. 529, 30 L.Ed.2d 548 (1971). And the note addressing good time credit for prisoners in 51 Texas L.Rev. 348, 349 (1973), speaks of the statute as applying to "misdemeanor prisoners in county jails."

The opinion that the statute is applicable only to misdemeanor terms of prisoners is consistent with the exclusion from its operative effect of confinements for contempt. Logically and traditionally, an act of contempt adjudged to call for punitive redress is necessarily followed by an order of commitment, Ex parte Barnett, 600 S.W.2d 252, 256 (Tex.1980), not by the traditionally prescribed sentence for execution of the punishment assessed in the judgment of conviction for a misdemeanor offense. Tex.Code Crim.Pro.Ann. arts. 42.01 & 42.02 (Vernon Supp.1982). And traditionally, those committed to the county jail for contempt are given the appellation contemnors, or contemners, not the nomenclature of misdemeanant prisoners or inmates of the county jail, those to whom Article 5118a is specifically made applicable.

Also historically, a court has had the power necessary to preserve order and decorum, to demand respect, and particularly to enforce its mandates and decrees. Ex parte Davis, 171 Tex.Cr.R. 629, 353 S.W.2d 29, 34 (1962). This protective power includes the power to adjudicate and punish for contempt, which is an inherent power of a court and an essential element of judicial independence and authority. Ex parte Gorena, 595 S.W.2d 841, 843 (Tex.1979). In harmony therewith, the statutes of this State neither define contempt of court nor state the circumstances under which the courts exercise jurisdiction over contempt proceedings, Ex parte Norton, 144 Tex. 445, 191 S.W.2d 713, 714 (1946); and, by statute, the legislature has affirmatively approved the protective power of the courts. Tex. Rev.Civ.Stat.Ann. art. 1911a, § 1 (Vernon 1965 to 1981 Pamphlet Supp.).[2]

Consistent therewith, a court's protective power may be exercised when necessary to safeguard its dignity and authority. Ex parte Davis, supra. In upholding its authority, the court may utilize its power of contempt, purposed on the vindication of the majesty of the law, Ex parte Green, 116 Tex. 515, 295 S.W. 910, 911 (1927), to punish the contemnor for some completed act which affronted the dignity and authority of the court. Ex parte Werblud, 536 S.W.2d 542, 545 (Tex.1976).

Once the court exercises its contempt power by rendering a judgment of contempt, the power to modify that judgment rests with the rendering court, Ex parte Davis, 101 Tex. 607, 111 S.W. 394, 396 (1908), and not within the clemency power granted for relief against a criminal conviction. Ex parte Heptinstall, 118 Tex.Cr.R. 160, 39 S.W.2d 75, 76 (1931). The power to remit the punishment inflicted for contempt was early established as coming within the discretion of the court exercising its contempt power. Taylor v. Goodrich, 25 Tex.Civ.App. 109, 40 S.W. 515, 524 (Tex.Civ. App.—1897, no writ). Indeed, when the legislature has spoken directly to the subject, it has confirmed the discretionary power of the court to modify the jail confinement for contempt. Tex.Rev.Civ.Stat.Ann.

2. By the initial section of this statute, the legislature expressed its approval in these words:

Section 1. A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require the proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt.

art. 1911a, § 4 (Vernon 1965 to 1981 Pamphlet Supp.) (providing that a court which has punished a person by confinement for contempt of court for disobedience of a child support order may, in its discretion, modify its assessment of jail confinement to permit, consistent with Tex.Code Crim.Pro.Ann. art. 42.03, § 5 (Vernon Supp. 1982), serving the jail time awarded during off-work hours or on weekends; or, conformable to Tex.Fam.Code Ann. § 14.12 (Vernon Supp.1982), suspend its order of commitment and place the contemnor on probation).

Thus, from my viewpoint of the historical precedents and expressed observance of them, it is not logically sound to say that the legislature, in authorizing sheriffs to reward misdemeanant jail prisoners for good conduct with deductions from their sentences, intended that the authorization should extend to confinements of contemnors. Contempt is a matter sui generis, and to allow sheriffs to remit the definite confinement fixed for it is to sanction interference with the court's protective power, which heretofore has remained unchallenged, to preserve and uphold the sanctity of its judgments and decrees.[3] The dignity and integrity of the courts demand that there should remain inviolate the inherent power to enforce their valid orders and to exact definite penalties from those who deliberately despise such orders.

Accordingly, I would hold that Article 5118a does not apply to the punitive punishments fixed for contemnors. I would order that the relator be remanded to the custody of the sheriff to be held and confined in jail until she has served the thirty days' commitment ordered by the court as punitive punishment for her deliberate contempt. *See Ex parte Young*, 103 Tex. 470, 129 S.W. 599, 600 (1910).

---

**3.** Interestingly, the Sheriff of Lubbock County makes this statement in his affidavit: "Unless the Court in its order specifically excludes consideration of good time credit, it is my normal procedure to award one-half day credit of good time for each day of calendar time."