## Ex Parte E. T. Miller.

### No. 6885.   Decided November 1, 1922.

**1.—Contempt—Attorney and Client—Summary Judgment.**

It may be doubted if a summary judgment for contempt can be sustained, which was not entered at the time the alleged contempt was committed, but at a later day, and without any formal summons to the accused, etc.   It is also true that a judgment entry of a court, the legality of which is attacked, etc., may be freely discussed.   The judgment is set aside on other grounds.

**2.—Same—Judgment, Commitment, Contemptuous Utterance.**

Where it appeared that relator was an attorney in the trial of a criminal case, and attacked a judgment entry in another court in another action in discussing his plea of former jeopardy, and it did not appear in either the judgment of contempt or the commitment thereunder what the contemptuous utterance was, said judgment of contempt cannot be sustained by this court under a direct *habeas corpus* proceeding in this court.

**3.—Same—Argument of Counsel—Attorney and Client—Rule Stated.**

Where the alleged contempt grew out of the argument of the relator as attorney for his client, in discussing before the jury the plea of jeopardy, because the same defendant in another trial before another jury placed upon jeopardy, in that said other trial the jury had been discharged by the court without giving them sufficient time to render a verdict, etc., and it appearing to this court in a direct habeas corpus proceeding that there was no apparent transgression of the rules of fair discussion of an issue of fact in a court of justice, the judgment of contempt of the district judge against said defendant is erroneous and the relator is discharged.

From Randall County.

Original application for *habeas corpus* seeking relief from restraint of relator by the sheriff of said county in holding him by virtue of a judgment of contempt, punishing him by a fine of $25 for using improper language as an attorney, representing a client in the District Court.

The opinion states the case.

*E. T. Miller,* for himself, and *Stone, Miller & Guleke,* for relator.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE,—By direct writ of *habeas corpus* relator seeks relief at our hands from restraint by the sheriff of Randall county who is holding him by virtue of a judgment of contempt punishing him by a fine of $25.   Relator is an attorney and on the 16th day of September, 1921, was engaged in defending a client then on trial in a criminal case in the District Court of said county.   Among

other defenses relied on was that of former jeopardy, it being alleged in a plea presenting such defense that at a former time said client had been put upon trial for the same offense, and that without having kept the jury trying said case together for a sufficient length of time to render it altogether improbable that they could agree, and over the objection of the accused, the court trying said case had discharged said jury and declared a mistrial. The alleged contempt herein grew out of the argument of the relator on said 16th of September in his discussion before the jury of said plea of jeopardy. It further appears from the record that on the 19th of September, 1921, after the conclusion of the trial last had, the court had the sheriff to summon relator before him and then and there entered this judgment of contempt, fixing a fine of $100. Relator ot once filed a written and sworn statement disclaiming the use of any language, tone or manner which either in fact or intent was contemptuous, and asked that the judgment be set aside. This was refused, though the amount of the fine was reduced to $25.

Several interesting questions are suggested in the record which will not be discussed at length. It may be doubted if a summary judgment for contempt can be sustained which was not entered at the time the alleged contempt was committed but at a later day and without any formal summons to the accused, or the entry of any judgment *nisi* or the hearing of any evidence. It is also true that a judgment entry or other action of a court, the legality of which is attacked in a proper case, and which becomes an issue upon the trial of some other case, or upon another trial of the same case, can be discussed as freely and its illegality urged as strongly as though the court action so attacked was that of a court foreign to the forum then sitting.

However in considering the instant case we observe that neither the judgment of contempt nor the commitment issued thereunder presents the language of the supposed contemptuous utterance. In the judgment we find the following:

"Said E. T. Miller, in a loud voice and arrogant and vehement manner stated to the said jury in the presence and hearing of said court and Judge, substantially that he had no complaint against the jury discharged but did against the court, and that the judge discharged the jury after only asking them if they could agree upon a verdict and without interrogating them further, and without holding them together as long as should have been done, and that anybody ought to have known better than to discharge the jury under such circumstances, and that he was grateful that there was a jury to protect a man from such action of a judge in discharging a jury in such a case without exercising any more care than the Judge of this court exercised to find out if the jury might agree upon a verdict if kept together longer, etc."

Bearing in mind that the discharge of the former jury depended for its illegality upon the question as to whether the trial court had kept said jury together a sufficient length of time to render it altogether improbable that they could agree, as is the law of Article 759, C. C. P., and also that it was admitted that said former jury was kept together but twenty-four hours and was discharged over the objection of the accused,—we observe that it was necessary in order to induce the jury trying this case, to agree with his client upon his plea of jeopardy, that relator convince them that the action of the court in so discharging the former jury was unwarranted, was illegal and wrong. Analyzing the alleged contemptuous argument of relator above quoted, it first consists of the statement that "he had no complaint against the jury discharged, but against the court." This was necessarily true. No action of the former jurors was an issue, but the complaint was solely of the action of the court in discharging them. Said argument then proceeds as follows: "The judge discharged the jury after only asking them if they could agree upon a verdict and without interrogating them further." This may or may not have been true in fact, as would appear from the evidence, but if not true the matter would then resolve itself into one for the State's counsel to look after in his guarding of the rights of the State; but the fact that the trial court thought or believed it untrue would not make it contemptuous. Said argument then proceeds: "and without holding them together as long as he should have done, and that anybody ought to have known better than to discharge the jury under the circumstances." If relator was right and the jury was discharged too soon, then he was within his rights in urging that the court was wrong in discharging said jury, and it seems to us not to be an overstepping of the bounds of fair argument to say that the judge ought not to have done so, or that he ought to have known better. This would appear but the expression of the opinion of the relator that in view of the law and the facts before him, the trial court should have refrained from such premature discharge. The further expression in said argument that relator was grateful that there was a jury to protect his client from the action of the judge in discharging said jury without exercising more care than the judge had exercised in finding out whether the jury might agree on a verdict, would not appear to us to be any more reflective than the hackneyed argument contained in the artistic appeals to the jury in which the system is lauded that gives to one accused of crime the right to be tried before twelve of his peers rather than before the court. The right or wrong of the court's former discharge of the jury had become an issue before this jury, and we are forced to conclude that relator might urge the wrong of it even in a loud, vehement and arrogant manner, provided his language and manner be decent and such as he might fairly use in discussing the acts or testimony of any other citizen in a court

of justice. It is true that the dignity of the courts is to be upheld and decorous conduct and language greatly become the advocate at the bar, but the right of free speech and of full representation by counsel guaranteed to one accused of crime, is of serious weight and much caution should be exercised in any case that these rights be not infringed or denied by reason of the fact that the person under discussion or criticism is the learned trial judge and the thing legitimately under fire is his action. The courts are but human. We appreciate keenly the attitude of the trial judge, for the judgments of appellate courts are often vigorously and correctly assailed, but the great end of court precedure is justice, in the seeking of which no personal feeling, passion, prejudice or mere proprieties should be allowed to operate as a bar. We are of opinion that in so far as the substance of relator's argument set out in the judgment of contempt reflects the things said and done by him, there was no apparent transgression of the rules of fair discussion of an issuable fact, and it follows that we think the said judgment of contempt was erroneous.

The relief prayed for is granted and a discharge of relator is ordered.

*Relator discharged.*