EX PARTE MILTON K. NORTON.

No. A-734. Decided January 16, 1946.
(191 S. W., 2d Series, 713.)

*Carl E. Broyles* and *J. E. McLemore,* both of Dallas, for relator.

It was fundamental error on the part of the trial court in holding relator in contempt for the reason that the contempt, if any, was committed outside the presence of the court and no affidavit of any description was ever filed in said court charging your relator with contempt. Johnson v. Sunset Stores, 27 S. W. (2d) 644; Ex parte Ratliff, 117 Texas 325, 3 S. W. (2d) 406; Ex parte Ireland, 38 Texas 344.

*Carter, Gallagher & Barker,* of Dallas, for respondent.

The restraining order of which relator is held in contempt, having been previously issued the court did not commit fundamental error in adjudging the relator in contempt; neither did the court commit error so adjudging relator for the reason that the term "within the presence of the court" is not restricted to the court room but embraces all of the constituent parts of the court, such as witness room, jury room and hallways and any contemptuous conduct in any part thereof constitutes a direct contempt of the court. In re Savin, 131 U. S. 267; In re Terry, 128 U. S. 289.

MR. JUSTICE SHARP delivered the opinion of the Court.

Relator, Milton K. Norton, because he was adjudged to be in contempt of court by the Honorable John. A. Rawlins, Judge of the 116th Judicial District Court of Dallas County, Texas, was committed to the custody of the Sheriff of Dallas County. Relator filed a petition for habeas corpus in this Court, and was released under bond pending the final decision of his petition.

The precise question presented here is whether the facts embraced in the record show that the trial court found relator guilty of contempt for his conduct and acts committed in the presence of the court, and whether the court was authorized to enter the judgment of contempt for such conduct and acts.

The judgment of contempt sets out the facts which caused the court to hold relator in contempt, as follows:

On November 13, 1945, came on to be heard before the court, without a jury, cause No. 96049F, Kathleen Voisen v. Lucile Nichols, the suit being in the nature of a habeas corpus proceeding for the custody of a minor child. At previous date the Honorable W. L. Thornton, sitting for the 116th District Court, had granted a temporary restraining order, restraining the defendant from interfering with plaintiff's custody of the child and from removing the child from the jurisdiction of the court; and on or about November 6, 1945, the Honorable John A. Rawlins, judge of said court, had reset the case for trial on its merits, together with the habeas corpus proceeding, for November 13, 1945, continuing the temporary restraining order in full force until the final disposition of the case. On November 13, 1945, the judge announced that he had some other cases to hear and business to transact, and that it was about time for a recess of the case. Thereupon counsel for

the defendant moved the court that defendant, mother of the minor, be permitted to have custody of the minor child during the recess period. This motion was overruled by the court; leaving the custody of the minor with the plaintiff, aunt of the minor. While hearing other matters during the noon hour, a report came to the judge that defendant had possession of the child and was leaving the courthouse. The judge instructed the baliff to bring the defendant and the child back into the courtroom, which he did. The attorneys, and particularly relator Milton K. Norton, and all other interested parties being present, the court, being in session, then heard the parties concerning the matter, at which time, as recited in the judgment of contempt, relator stated to the court: "That he couldn't see where his client had done anything wrong; that she had a right to the child and the plaintiff did not; that she asked him about taking the child and he told her to go ahead, that there was nothing to stop her and there was no court order against it; that she was outside the courtroom and nothing could be done about it; and the said Norton further stated to the Court, when the Court remarked that he considered his conduct in contempt, that it was immaterial to him what the Court did about it and that he knew something about contempt himself and that he knew his rights." The judgment further reads: "It appearing to the Court, and the Court further finds, that the above mentioned acts, words and conduct of the said attorney, Milton K. Norton, are disrespectful, contumacious and contemptuous of the authority and dignity of the said Court and in violation of the oath and duty of the said Milton. K. Norton as an officer of the court, and constitutes contempt of this Court."

Relator's punishment was fixed at a fine of $50.00 and confinement in the county jail of Dallas County, Texas, for a period of one full day, twenty-four hours.

The Clerk of the Court, in obedience to the foregoing judgment of the court, issued an attachment and commitment in contempt, commanding that the Sheriff of Dallas County take relator into custody until he complied with the foregoing judgment.

Relator contends that no contempt was committed. His position is that the temporary restraining order giving custody of the minor to the plaintiff was no longer in effect and was improperly extended by the court. He further states that if there was any contempt, it was committed wholly outside the presence of the court; that there was no affidavit nor formal notice issued concerning such contempt; that he was given no opportunity

for a hearing; and that he was fined and incarcerated without due process of law.

The statutes of this State do not define contempt of court, nor do they state the circumstances under which the courts exercise jurisdiction over contempt proceedings. 9 Tex. Jur., p. 581, sec. 1. The accepted rule on the question of contempt of court is stated in 12 Amer. Jur., p. 389, sec. 2, in the following language:

"Generally speaking, he whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or prejudices parties or their witnesses during a litigation, or otherwise tends to impede, embarrass, or obstruct the court in discharge of its duties is guilty of contempt." See also 9 Tex. Jur., p. 381, sec. 1.

In 12 Amer. Jur., p. 390, sec. 4, is found the general definition of direct and constructive contempt, accepted by both civil and criminal courts, as follows:

"Contempts of court are classified as direct and as indirect, or constructive, the test being whether the contempt is offered within or outside the presence of the court. A direct contempt consists of words spoken or acts committed in the presence of the court * * *."

If the facts embraced in this record show that the trial court was undertaking to hold relator in contempt for a constructive contempt, then relator's contention is correct, and the judgment of the trial court should be set aside.

Relator cites many decisions in support of his contentions. The following are the main ones: Ex parte Ratliff, 117 Texas 325, 3 S. W. (2d) 406; 57 A. L. R. 541; Ex parte Kearby, 35 Texas Cr. R. 634, 34 S. W. 962; Ex parte Miller, 92 Texas Cr. R. 489, 244 S. W. 612.

The decisions relied upon by relator are not in point, and deal mainly with facts involving constructive contempts. In the case of Ex parte Ratliff, 117 Texas 325, 3 S. W. (2d) 406, 57 A. L. R. 541, Mr. Justice Greenwood, writing the opinion for this Court, stated the heart of the case involved there in the following paragraph:

"It is manifest that the act adjudged contemptuous took place without the presence of the court. Such act was the real or pre-

tended sale of the notes *after* the date of the restraining order. The court was utterly without a basis for any finding as to the true date of the notes' sale or transfer save as derived from the testimony of witnesses introduced on the hearing upon defendant's motion to dissolve the restraining order."

In the case of Ex parte Kearby, 35 Texas Cr. R. 634, 34 S. W. 962, the following appears in the order of the court entered in that case:

"It is ordered by the court that J. C. Kearby be, and he is hereby, adjudged to be again in contempt of this court, in that the said Kearby, being already in contempt of this court, as appears from the records thereof, and not having purged himself of said contempt, was informed by the court, after having been released by another tribunal, by writ of habeas corpus, from jail, and on again appearing thereafter in this court, that he nor Mr. Hawkins, who had also been released by said habeas corpus proceedings, could not again appear in the case then on trial until they had purged themselves of said contempt; * *."

In discussing the foregoing order the court said:

"Looking to the order itself, it occurs to us that the improper action of the court in this matter was the moving cause for what subsequently occurred, and that the relator could hardly be considered in contempt in insisting on his right to appear in the case, as he did, without being compelled to humiliate himself before the court and jury by complying with the unwarranted demand of the court that he should in some manner purge himself. The court had no power to suspend relator from the privilege of practicing his profession. This can only be done for certain causes enumerated in the statute, and in accordance with the form therein provided; and in such cases he is guaranteed the right of trial by jury. See Rev. Civ. St. arts. 262-268, inclusive."

The court further said:

"The learned judge in this case did not at the time state any finding of the matter of contempt, nor did he make any adjudication as to the fine or imprisonment imposed, nor has ever any writ of commitment been issued in this case."

The case of Ex parte Miller, 92 Texas Cr. R. 489, 244 S. W. 612, involved the question as to whether or not the judge had properly discharged a jury at a former trial, and that was an issue raised in a subsequent trial. The trial court held the attor-

ney in contempt for vigorously asserting that the court had acted improperly in discharging the jury prematurely. The Court of Criminal Appeals stated the gist of the facts in that case in the following language:

"The right or wrong of the court's former discharge of the jury had become an issue before this jury, and we are forced to conclude that relator might urge the wrong of it even in a loud, vehement, and arrogant manner, provided his language and manner be decent and such as he might fairly use in discussing the acts or testimony of any other citizen in a court of justice."

■ In ascertaining whether the acts and conduct of relator in the presence of the court justified the court in holding him guilty of contempt, we must take into consideration all of the facts and circumstances concerning this case. The case was pending before the judge for determination, and he had jurisdiction of the cause and the parties thereto. The custody of a child was involved, and a trial court is given a broad discretion in handling such a case and in determining who is entitled to the custody of the child pending the trial of the case. See Tunnell et ux. v. Reeves et ux. (Com. App.), 35 S. W. (2d) 707; Legate v. Legate, 87 Texas 248, 28 S. W. 281; State v. Deaton, 93 Texas 243, 54 S. W. 901. The duty rested upon the court to dispose of the questions presented in a just, orderly, and legal manner. It was the duty of the attorney appearing before the court in the case to so demean himself as to show respect for the degnity and authority of the court.

An attorney is an officer of the court, and the relationship between the court and attorneys is reciprocal. In their proper spheres they both have certain rights, and the rights of one should be recognized and respected by the other. This is essential, if courts are to function in an orderly manner. In 9 Tex. Jur., p. 600, sec. 16, the rule with reference to the duty of an attorney regarding his conduct toward the court is stated as follows:

"It is particularly the duty of an attorney to maintain the respect due to courts and judicial officers, and any breach of this duty is a contempt punishable by fine or imprisonment." See also 12 Amer. Jur., p. 396, sec. 11.

Until the questions presented in the case were disposed of, the judge was trying to have the orders of the court relating to the custody of the child obeyed. In the judgment, the judge

specified the acts and conduct of relator which caused him to hold relator in contempt of court and issue the commitment. It is quite plain from the record that relator knew that the judge felt that his orders were being disobeyed, and he also knew that the judge considered that relator, by his conduct and improper remarks, was disrespectful concerning the dignity and authority of the court. Relator in open court expressed his indifference as to what the court might hold or do on account of his remarks and conduct, and later did not try to purge himself of his improper remarks and misconduct, although he was given ample opportunity to do so. Therefore the district judge had authority to punish him for such improper remarks and misconduct, as they were in direct contempt of the court. Nor was it necessary for the judge to file an affidavit charging relator with contempt, or follow the procedure necessary in constructive contempt. Ex parte Chambers, 120 Texas Cr. R. 77, 47 S. W. (2d) 308.

■ This case is brought here by direct proceedings, and not by appeal. In the case of Ex parte Lea and Still, 127 Texas 256, 93 S. W. (2d) 720, this Court said:

"In habeas corpus proceedings this Court is restricted to the inquiry whether or not the trial court had jurisdiction of the cause and of relators. (Citing cases.) Likewise this court is limited to the question as to whether or not the commitment is void. The question is, not whether the commitment was erroneously issued, but whether or not it was absolutely void. * *

"As said by Judge Williams, speaking for the Supreme Court, in the case of Ex parte Testard, 101 Tex. 250, 106 S. W. 319, 320, which involved habeas corpus proceedings: 'This is not an appeal from the judgment of the district court, but an application for the release of the relator, which can be sustained only by making it appear that the judgment is void. * * * The judgment, therefore, is valid against collateral attack, and no amount of evidence offered before this court, tending to show that the relator was in fact innocent of the charge, can now avail him. The question of his guilt or innocence was for the trial court, and was concluded by its judgment pronounced after a hearing."

The trial court had the authority to enter the judgment and order of commitment, and we find nothing in this record that would justify this Court to overrule the judgment of the trial court and discharge relator. Therefore the order granting the temporary writ of habeas corpus is set aside, and relator is remanded to the custody of the Sheriff of Dallas County to carry out the judgment of the trial court.

Opinion delivered January 16, 1946.